**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Oscar G.S.C.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*.

Respondents.

Case No. 26-cv-04017 (ECT/ECW)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Oscar G.S.C.'s[1] Verified Petition for Writ of Habeas Corpus, filed on September 15, 2026. (Dkt. 1.) This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the following reasons, this Court recommends that the Petition for Writ of Habeas Corpus (Dkt. 1) be granted.

## I. BACKGROUND

Petitioner is a citizen of Mexico. (Dkt. 1 ¶ 11.) The Petition alleges, and Respondents (also referred to as "the Government") do not dispute, that in approximately

---

[1] This District has adopted a policy of using only the first name and last initial of any non-governmental parties in orders and report and recommendations in immigration matters.

2015, Petitioner entered the United States without inspection. (*Id.*; Dkt. 5 at 1.) The parties do not assert that Petitioner encountered immigration, border patrol, or any other federal officials at that time.

On or about January 27, 2026, Deputy T. Billman of the Dunn County Sheriff's Office in North Dakota pulled over a vehicle on suspicion of speeding. (Dkt. 1 ¶ 12; Dkt. 6-1 at 3.) Petitioner was a passenger in the vehicle, which held one other passenger in addition to the driver. (Dkt. 1 ¶ 12.) Petitioner alleges that all three occupants of the vehicle were Latino (*id.*), and Respondents allege that no occupant of the vehicle spoke English during the traffic stop (Dkt. 5 at 1; Dkt. 6-1 at 3).

The parties appear to disagree regarding what occurred during the traffic stop. Petitioner alleges:

> When [Petitioner's] friend, the driver of the vehicle, produced a Mexican drivers license, [North Dakota] law enforcement took everyone in the vehicle into custody. [Petitioner] spent the night in a county jail, then was apprehended by Customs and Border Protection ("CBP") the next day, when Respondents' agents arrived to pick him up from the county jail. He was then taken to the Burleigh-Morton Detention Center in North Dakota.

(Dkt. 1 ¶ 12.) The Petition is verified by counsel for Petitioner as "true and correct to the best of [counsel's] knowledge" based on counsel's conversation with Petitioner, counsel's review of Petitioner's previous habeas corpus filings provided by his North Dakota federal attorney, counsel's investigator's conversation with Petitioner's wife, "a review of Respondents' publicly available websites, and [counsel's] own experience litigating similar petitions for habeas corpus relief by wrongfully detained immigrants since the beginning of Operation Metro Surge." (*Id.* at 17.)

Respondents, on the other hand, rely on a Record of Deportable/Inadmissible Alien, Form I-213 ("Form I-213") for the following:

> On January 27, 2026, at 2325 hours, Border Patrol Agent (BPA) W. Lowry responded to a request for immigration assistance from the Dunn County Sheriff's Office. Deputy T. Billman encountered three subjects during a traffic stop in Killdeer for speeding. The driver of the vehicle presented an expired Mexican Driver's License as his only form of identification and the two passengers presented Mexican Consular Cards as their only form of identification when asked. None of the subjects spoke English during the encounter. The deputy was unable to find any records of a valid driver's license or automobile insurance for the listed subjects. The deputy then contacted the Border Patrol for immigration and identification assistance.
>
> BPA W. Lowry provided the assistance by running records checks on given biographical information. One of the subjects, identified as [Petitioner] (DOB: [XX/XX/XXXX], COC: Mex) had no record of entering the United States legally. BPA W. Lowry conducted an immigration inspection by phone. He identified himself as a Border Patrol Agent and questioned the [Petitioner] as to his citizenship. The subject freely admitted to being illegally present in the United States. Based on the results of the record checks and inspection, BPA W. Lowry asked the deputy to detain [Petitioner].
>
> [Petitioner] was transported to the Southwest Multi County Corrections Center (S.W.M.C.C.C.) for holding until Border Patrol transport could be arranged. At 0930 hours on January 28, 2026, BPA Owen arrived at the S.W.M.C.C.C., took custody of the subject, and transported him to the Portal Border Patrol Staton [sic] for processing.

(Dkt. 6-1 at 3-4.)

Respondents authenticated the Form I-213 and other exhibits through a Declaration of United States Immigration and Customs Enforcement ("ICE") Deportation Officer ("DO") James Vandervaart. (*See, e.g.*, Dkt. 5 at 1; *see also* Dkt. 6 (Vandervaart Declaration).) Vandervaart does not have personal knowledge of the circumstances of Petitioner's detention. (*See* Dkt. 6 ¶¶ 4-7 (relying on certain forms as records maintained

in the ordinary course of business); Dkt. 6-1 (Form I-213).) The Form I-213 was signed by Border Patrol Agent Adam L. Owen on January 28, 2026 at 1:25 p.m. (Dkt. 6-1 at 1.) Owen picked up Petitioner on January 28, 2026 at the Southwest Multi County Corrections Center, but it was a different Border Patrol Agent—a W. Lowry—who spoke with Billman (over the phone) during the traffic stop on January 27, 2026. (*Id.* at 3-4.) According to the Form I-213, Petitioner "freely admitted to being illegal present in the United States" and was detained at Lowry's request "based on the results of the record checks and inspection." (*Id.* at 4.)

The Form I-213 further states that Owen took custody of Petitioner at 9:30 a.m. on January 28, 2026 and transported him from the S.W.M.C.C.C. to the Portal Border Patrol Station for processing. (*Id.*) At 3:17 p.m. on January 28, 2026, after Owen took custody of Petitioner, Acting/Patrol Agent in Charge Shawn R. Burman issued a Warrant for Arrest of Alien, Form I-200 ("I-200 warrant"), for Petitioner. (Dkt. 6-2.) At 3:31 p.m. on January 28, 2026, Owen signed a Certificate of Service stating he served the I-200 warrant on Petitioner at 2:30 p.m. on January 28, 2026 "at Portal, North Dakota." (*Id.*) In other words, the Certificate of Service claims that Owen served the I-200 warrant on Petitioner approximately 47 minutes before that same warrant issued.

The I-200 warrant states:

> To any officer delegated authority pursuant to Section 287 of the Immigration and Nationality Act: From evidence submitted to me, it appears that: [Petitioner] an alien who entered the United States at or near UNKNOWN PLACE on Unknown Date is within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act. By virtue of the authority vested in me by the immigration laws of the United Sates and

> the regulations issued pursuant thereto, I command you to take the above-named alien into custody for proceedings in accordance with the applicable provisions of the immigration laws and regulations.

(*Id.* (citation modified).)

At 3:17 p.m. on January 28, 2026, Burman issued a Notice to Appear ("NTA"), Form I-862, for Petitioner. (Dkt. 6-3 at 1.) At 3:29 p.m. on January 28, 2026, Agent Owen signed a certificate of service stating that he served the NTA on Petitioner on January 28, 2026 in Spanish (with no indication that an interpreter was used), and a signature for Petitioner appears in the appropriate signature block. (*Id.* at 2.) The NTA directs Petitioner to appear for removal proceedings under section 240 of the Immigration and Nationality Act as "an alien present in the United States who has not been admitted or paroled." (*Id.* at 1.) The NTA states that Petitioner is subject to removal from the United States pursuant to two sections of the Immigration and Nationality Act:

> 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.
>
> 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

(*Id.* at 4 (citation modified).) The NTA stated that Petitioner would have a hearing before an immigration judge on February 5, 2026 to show why he should not be removed from the United States. (*Id.*)

Petitioner alleges that he was not served with or shown the I-200 warrant. (Dkt. 1 ¶ 15.) The Form I-213 states that Petitioner "was processed as a NTA-DETAINED and will be turned over to ICE/ERO" and that Petitioner "was given copies of his I-862, I-200 and EOIC - 33 and a list of free legal services," but does not indicate when this occurred. (Dkt. 6-1 at 5.) The Form I-213 contains no other information regarding these forms or when they were provided to Petitioner, nor does the Vandervaart Declaration. (*See* Dkt. 6-1; Dkt. 6.)

At the moment of Petitioner's seizure, Petitioner was employed, married to a United States citizen, had lived in North Dakota for over a decade, and was well settled in his community. (Dkt. 1 ¶ 41; Dkt. 6-1 at 3-4.) By the time they completed the Form I-213, Respondents knew the name of Petitioner's wife and that she was a United States citizen. (*See* Dkt. 6-1 at 3.) Respondents also had Petitioner's home address as well as the name and address of his employer. (*See id.* at 3, 5.)

On February 5, 2026, while detained in North Dakota, Petitioner filed a habeas corpus petition in the United States District Court for the District of North Dakota ("North Dakota Petition"). (Dkt. 1 ¶ 13; *see also* Dkt. 1-1.) The North Dakota Petition alleged violations of the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act. (Dkt. 1 ¶ 13; *see also* Dkt. 1-1 ¶¶ 35, 37, 44.) It further alleged that Respondents to the North Dakota Petition had no warrant for Petitioner's arrest and detention. (Dkt. 1-1 ¶ 50.) Respondents to the North Dakota Petition alleged that they served the NTA on Petitioner on January 28, 2026, but they did not produce or allege the existence of any warrant. (Dkt. 1-2 at 3.) Instead,

Respondents argued to the North Dakota District Court that Petitioner was lawfully detained under 8 U.S.C. § 1225(b)(2) and therefore, no warrant was required and Petitioner was not entitled to release or a bond hearing. (*Id.* at 3, 6.)

On February 24, 2026, a United States District Judge for the District of North Dakota denied Petitioner's North Dakota Petition. *See* [*Oscar S.C.*] *v. Bondi*, No. 26-CV-00039, 2026 WL 508084, at *1 (D.N.D. Feb. 24, 2026). (*See* Dkt. 1-3.) The North Dakota District Court based the denial on its conclusion that "Section 1225(b)(2)(A) applie[d] to Petitioner" and, "[a]ccordingly, Petitioner [was] not entitled to a bond hearing or release." *Id.* at *3. (*See id.* at 5.) Petitioner asserts in the case before this Court that his North Dakota Petition "did not raise any Fourth Amendment claims" and that the North Dakota District Court did not "address the Fourth Amendment or Respondents' obligations when making arrests." (Dkt. 1 ¶ 16.) In their response in the instant case, Respondents do not mention the North Dakota Petition. (*See* Dkt. 5.) Neither party argues that the North Dakota Petition, or the order denying it, affects the Petition before this Court now or this Court's decision on the Petition before it.

After his North Dakota Petition was denied, Petitioner was transferred to Kandiyohi County Jail in Minnesota. (Dkt. 1 ¶ 17.) On May 20, 2026, while Petitioner was detained in Kandiyohi County Jail, an Immigration Judge ordered Petitioner removed from the United States. (Dkt. 6-4 at 3, 5.) Respondents state that Petitioner has reserved appeal and that the removal order is not administratively final. (Dkt. 5 at 3.)

On September 15, 2026, while still detained at the Kandiyohi County Jail, Petitioner filed this Petition in the United States District Court for the District of

Minnesota. (*See* Dkt. 1.) On September 16, 2026, the Court issued an Order requiring Respondents to file an answer the Petition by September 22, 2026. (Dkt. 3 at 1.) The Order required Respondents' answer to include, among other things, "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition." (*Id.* at 1-2.) Petitioner was permitted to file a reply to Respondents' answer. (*Id.* at 2.) Respondents filed their answer and supporting materials on September 22, 2026 (Dkts. 5-6) and Petitioner filed his reply on September 25, 2026 (Dkt. 7). This matter is now ripe for decision.

## II. LEGAL STANDARD

A federal court may provide habeas relief to a person who is detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). "The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus extends to immigration-related detention." *Diego L. v. Bondi*, No. 26-CV-382 (JMB/DJF), 2026 WL 145206, at *2 (D. Minn. Jan. 20, 2026) (citation modified). Petitioner has the burden of proving his entitlement to relief by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## III. ANALYSIS

Petitioner seeks release or, in the alternative, a bond hearing in which Respondents, to justify further detention of Petitioner, bear the burden of proof to demonstrate that Petitioner is a flight risk or a danger to the community. (Dkt. 1 at 16.) Petitioner bases his request for relief on his claim that his detention is unlawful under the

Fourth Amendment to the United States Constitution as well as the applicable statutes and regulations. (*Id.* ¶¶ 39-45.)

The Court begins by addressing the availability of habeas relief for Petitioner, then discusses the relevance of *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), to the arguments presented here, and concludes by analyzing the legality of Petitioner's warrantless arrest and continued detention.

**A. Availability of Habeas Relief**

As a preliminary matter, the Court addresses whether a habeas petition provides a remedy to noncitizens detained in violation of law. Respondents assert that it does not, arguing that, even if "Petitioner's arrest was unlawful, he would not be entitled to release as a result." (Dkt. 5 at 5.) Petitioner disagrees and notes that Respondents' argument has been rejected several times by courts of this District. (Dkt. 7 at 4-5.) The Court agrees with Petitioner and the weight of authority of this District.

To make the argument that habeas is not the appropriate remedy for individuals detained after an unlawful arrest, Respondents first rely on the following quote from *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984): "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." (Dkt. 5 at 5 (quoting *Lopez-Mendoza*, 468 U.S. at 1039).) Respondents misunderstand or mischaracterize *Lopez-Mendoza*. There, the Supreme Court addressed a noncitizen's argument that his deportation should be prohibited. *See id.* at 1035, 1039. "*Lopez-Mendoza* teaches that the legality of an arrest does not itself determine

removability and that an unlawful arrest does not necessarily invalidate the ensuing immigration proceeding." *Carlos F.P.P. v. Blanche*, No. CV 26-3123 (JWB/JFD), 2026 WL 2824801, at *7 (D. Minn. Sept. 21, 2026) (citing *Lopez-Mendoza*, 468 U.S. at 1039-40). But if the Court grants the relief sought here, release from detention, Petitioner's removal proceeding would not be "invalidate[d] or alter[ed]." *Id.* *Lopez-Mendoza* therefore does not command the result that Respondents seek. *See, e.g.*, *id.*; *Emily Andreina N.V. v. Blanche*, No. 26-CV-2570 (KMM/EMB), 2026 WL 2209844, at *4 (D. Minn. July 31, 2026).

Respondents also turn to *Min-Shey Hung v. United States*, 617 F.2d 201 (10th Cir. 1980), for support. (*Id.* at 6.) In *Min-Shey Hung*, the Tenth Circuit concluded "deportation proceedings thus commenced must be allowed to proceed without the intervention of proceedings in the district court challenging the arrest." 617 F.2d at 202. However, the Tenth Circuit rendered this finding in the context of determining whether the purportedly unlawful arrest invalidated deportation proceedings, not whether it invalidated the petitioner's detention. *See id.* at 202-03; *see also Manuel P.N. v. Easterwood*, No. 26-CV-3799 (ECT/DJF), ECF No. 10 at 10 (D. Minn. Sept. 8, 2026) (distinguishing *Arias* and *Min-Shey Hung* from facts before the Court by noting that Petitioner was not seeking "to prohibit removal proceedings against him" (quoting *Ruben C.R. v. Mullin*, No. 26-CV-2950 (NEB/DTS), ECF No. 13 at 6 (D. Minn. Aug. 7, 2026))), *R. & R. adopted*, 2026 WL 2823650 (D. Minn. Sept. 21, 2026). Indeed, when discussing the validity of the petitioner's detention, the Tenth Circuit held that the lack of a warrant did not invalidate the petitioner's detention because the respondents complied with 8

U.S.C. § 1357(a)(2), which allows for arrest without a warrant in certain cases. *See Min-Shey Hung*, 617 F.2d at 202; *see also* 8 U.S.C. § 1357(a)(2). In other words, *Min-Shey Hung* does not preclude Petitioner here from seeking relief from his continued **detention**.

Respondents also rely on *Arias v. Rogers*, 676 F.2d 1139 (7th Cir. 1982), to support their arguments (*see* Dkt. 5 at 6), but this District has repeatedly rejected the proposition that *Arias* compels the conclusion that noncitizens such as Petitioner here cannot obtain a release if unlawfully arrested, *see, e.g.*, *Sorelys C.R.O. v. Blanche*, No. 26-CV-3859 (ECT/LIB), 2026 WL 2665657, at *2 (D. Minn. Sept. 10, 2026) (collecting cases). The Court agrees with the following analysis of the argument, stated in a recent opinion and order from Chief United States District Judge Eric C. Tostrud:

> Respondents argue that I should "adopt the Seventh Circuit's holding in *Arias* and conclude that an alien may not challenge their underlying arrest in immigration habeas proceedings if the alien is in removal proceedings." I decline to do so. Respondents concede that the Eighth Circuit has not addressed this issue. And the weight of persuasive authority from this District supports that a habeas petitioner in removal proceedings may challenge an unlawful arrest, and release is the appropriate remedy.

*Id.* (citations omitted). Moreover, Respondents fail to explain how *Lopez-Mendoza*, *Min-Shey Hung*, or *Arias* "**apply in the face of 8 U.S.C. § 1226(a)**, which requires 'a warrant issued by the Attorney General' as a predicate to discretionary detention under § 1226(a)." *Alberto N. v. Bondi*, No. 26-CV-1228 (ECT/ECW), 2026 WL 412748, at *2 (D. Minn. Feb. 13, 2026) (emphasis added) (addressing Respondents' reliance on *Lopez-Mendoza*, 468 U.S. at 1039, and *Arias*, 676 F.2d at 1142).

Respondents also seek support from *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149 (1923) (*see* Dkt. 5 at 5), a case which "establishe[d] that an unlawful original

arrest does not invariably require habeas release when sufficient lawful grounds for detention subsequently exist." *Carlos F.P.P.*, 2026 WL 2824801, at *7. The Court agrees with a recent analysis of United States District Judge Jerry W. Blackwell, who explained that section 1225 could not provide "the 'sufficient ground' contemplated by *Bilokumsky*" in cases in which a noncitizen's warrantless arrest does not satisfy the requirements of section 1357. *Carlos F.P.P.*, 2026 WL 2824801, at *7. As Judge Blackwell found:

> Section 1225 may require detention after the prescribed examination and determination, but § 1225 says nothing about the authority by which custody is acquired in the first instance. Section 1357 expressly governs that antecedent step: it authorizes ICE to take an interior noncitizen into custody without a warrant only when its statutory conditions are satisfied, and then directs that the person be brought before an examining officer. 8 U.S.C. § 1357(a)(2). The examination contemplated by § 1225 may determine whether detention is required, but it does not provide a separate basis for maintaining the same uninterrupted custody when the statutory authority required to initiate that custody was absent. That is why § 1225 is not the "sufficient ground" contemplated by *Bilokumsky* on the facts presented here.

*Id.* Respondents' reliance on *Bilokumsky* is therefore unpersuasive.

Respondents' additional reliance on caselaw from criminal cases is similarly unpersuasive. (*Id.* at 5-6.) Chief Judge Tostrud rejected the same arguments recently, providing the following explanation:

> Nevertheless, Respondents argue that if an unlawful arrest cannot act a bar to prosecution or entitle individuals to release in criminal cases, then release cannot be an appropriate remedy for an unlawful arrest in immigration habeas proceedings. Respondents also point to the Supreme Court's decision in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032 (1984) to argue that "[i]f suppression of evidence is not an appropriate remedy for a Fourth Amendment violation in immigration cases [under *Lopez-Mendoza*], it follows, a fortiori, that release from custody cannot be either." Respondents' arguments are unpersuasive. Respondents' analogy to criminal prosecution

> may be apt if Abdiraham was asking for relief from removal. But Abdirahman is not contesting his underlying removal proceedings, nor is he asking that his unlawful arrest bar such proceedings. Moreover, the availability of habeas relief in district court and the applicability of the exclusionary rule in immigration court are unrelated issues, and Respondents cite no authority to validate such a comparison.

*Abdirahman A. v. Blanche*, No. 26-CV-3086 (ECT/DLM), 2026 WL 2824339, at *2 (D. Minn. Sept. 21, 2026) (citation modified). The Court agrees with Chief Judge Tostrud and the weight of authority from this District in concluding that "[r]elease is the appropriate remedy for unlawful arrest." *Id.*; *see also Carlos F.P.P.*, 2026 WL 2824801, at *7; *M.-G. v. Easterwood*, No. 26-CV-3479 (LMP/SGE), 2026 WL 2531525, at *4 (D. Minn. Aug. 27, 2026); *Wilson P. v. Blanche*, No. 26-cv-3448 (JMB/SGE), 2026 WL 2294612, at *5-6 (D. Minn. Aug. 10, 2026); *N.V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4-5 (D. Minn. July 31, 2026); *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2-3 (D. Minn. June 29, 2026); *Walther Ademir A. S. v. Blanche*, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *4 (D. Minn. June 16, 2026); *Sergio R.V.-P. v. Mullin*, No. 26-cv-2361 (NEB/ECW), 2026 WL 1727869, at *6 (D. Minn. May 29, 2026), *R. & R. adopted*, 2026 WL 1725810 (D. Minn. June 15, 2026).

### B. *Avila v. Bondi*

Respondents state that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), citing the Eighth Circuit's decision in *Avila* for support. (Dkt. 5 at 2.) But *Avila* does not foreclose Petitioner's constitutional challenges to his detention. In *Avila*, a divided panel of the Eighth Circuit Court of Appeals approved of DHS's

interpretation of the INA to conclude that immigrants already present in the United States can be treated as arriving aliens seeking admission and mandatorily detained under section 1225(b)(2)(A). *See Avila*, 170 F.4th at 1135-36. However, *Avila* did not address challenges to such detention based on the Fourth Amendment. *See id.* at 1132-33 (stating that "[t]his case concerns the scope of the Government's power to detain aliens under 8 U.S.C. § 1225" and engaging in **statutory** interpretation); *see also Hector H.A. v. Blanche*, No. 26-CV-02914 (KMM/ECW), 2026 WL 2794177, at *3, 14-15 (D. Minn. Aug. 5, 2026) (finding "*Avila* did not address challenges to such detention based on the Fourth and Fifth Amendments" and considering Fourth Amendment challenge) (collecting cases), *R. & R. adopted*, 2026 WL 2516700 (D. Minn. Aug. 26, 2026).

More importantly, the Court concludes section 1225 does not foreclose the relief sought because, as a factual matter, Respondents did not arrest Petitioner pursuant to 8 U.S.C. § 1225.[2] (*See* Dkt. 6-2.) Sections 236 and 287 correspond to 8 U.S.C. § 1226 and 1357, respectively. Thus, given the plain language of the I-200 warrant referencing "section 236 of the Immigration and Nationality Act" in the record here (*see id.*), the Court finds that, in fact, Respondents arrested Petitioner pursuant to the framework of 8 U.S.C. § 1226 as opposed to section 1225. *See Wilson P. v. Blanche*, No. 26-CV-3448 (JMB/SGE), 2026 WL 2294612, at *3 (D. Minn. Aug. 10, 2026) (collecting cases).

---

[2] The Court recognizes that the District of North Dakota found Petitioner's detention was authorized under section 1225(b)(2)(A) and Petitioner was "not entitled to a bond hearing or release." *Oscar S.C.*, 2026 WL 508084, at *3. However, that decision did not speak to the statutory authority relied on in the I-200 warrant or decide any Fourth Amendment arguments.

Further, to the extent that the Government is asserting that it has the authority to conduct a warrantless arrest of Petitioner under section 1225 without consideration of section 1357, which they do not directly address, the Court agrees with "[t]he great weight of persuasive authority from this District" and concludes, consistent with that authority, "that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357." *Jaminton R.B. v. Mullin*, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *4 (D. Minn. Aug. 13, 2026) (collecting cases).

**C. Validity of Warrantless Arrest**

Because Respondents assert that Petitioner's warrantless arrest was proper under section 1225(b) (Dkt. 5 at 2-7),[3] the Court examines whether Respondents complied with section 1357. *See Jaminton R.B.*, 2026 WL 2350324, at *3-4; *see also Jorge Anibal P. P. v. Blanche*, No. 26-CV-3125 (LMP/LIB), 2026 WL 2017765, at *2 (D. Minn. July 13, 2026) ("Without an administrative warrant in hand at the time of [the petitioner's] arrest, the arrest must be judged by the warrantless-arrest framework of 8 U.S.C. § 1357(a)(2)." (quoting *Felix Alberto J. M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *1 (D. Minn. July 2, 2026))). Section 1357 provides in relevant part:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
>
> * * *
>
> **(2)** to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in

[3] Notwithstanding the issuance of an I-200 warrant at 3:17 p.m. on January 28, 2026 (Dkt. 6-2), Respondents do not rely on that warrant and acknowledge that Petitioner's arrest was "warrantless."

> pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, **if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest**, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2) (emphasis added). Reason to believe "means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010); *see also Winston N.-P. v. Blanche*, No. 26-CV-3368 (LMP/JFD), 2026 WL 2268432, at *2 (D. Minn. Aug. 6, 2026) (citing *Quintana*, 623 F.3d at 1239).

Petitioner argues that, at the time of Petitioner's warrantless arrest, "immigration agents lacked probable cause, or 'reason to believe,' that petitioner was both 'in the United States in violation of any such law or regulation' regulating the admission, exclusion, expulsion, or removal of noncitizens **and** 'likely to escape before a warrant can be obtained for his arrest.'" (Dkt. 1 ¶ 41.) The Court declines to address whether Respondents had probable cause to believe that Petitioner was in the United States in violation of law because Respondents fail to show that Petitioner's warrantless arrest was supported by probable cause to believe Petitioner was "likely to escape," 8 U.S.C. § 1357(a)(2), and relief can be provided on that basis alone, *see, e.g.*, *Jorge Anibal P. P.*, 2026 WL 2017765, at *3-4.

"Likely to escape" under 8 U.S.C. § 1357(a)(2) means "likely to evade detention by immigration officers." *Walther Ademir A. S.*, 2026 WL 1734906, at *3 (quoting *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026)). "Just because a noncitizen

is unlawfully present in the United States does not mean that he or she is likely to escape." *Francisco M.A. v. Blanche*, Civil No. 26-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026). It is Respondents' "burden to make a particularized assessment into whether the noncitizen is likely to evade detention." *Winston N.-P.*, 2026 WL 2268432, at *3 (citation modified).

The inquiry regarding likelihood of escape "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" *Winston N.-P.*, 2026 WL 2268432, at *2 (quoting *Walther Ademir A. S.*, 2026 WL 1734906, at *3). In other words, the Court must not only look at whether Petitioner "was likely to leave the scene of the encounter before ICE officers could obtain a warrant[,] but [also] whether it was likely that ICE officers would be able to locate [Petitioner] after obtaining a warrant." *Id.*; *see also Hector G.P.R. v. Warden of Freeborn Cnty. Adult Det. Ctr.*, No. 26-CV-3048 (NEB/DLM), 2026 WL 2390280, at *4 (D. Minn. Aug. 7, 2026) ("The question, therefore, is not merely whether Hector G.P.R. was likely to flee from the roadside stop, but whether ICE would be able to locate him after obtaining a warrant for his arrest.").

Respondents make the following argument regarding probable cause to believe that Petitioner was a flight risk: "Petitioner had been in the United States illegally for over a decade, and had made no effort to regularize his status. He was encountered on a remote North Dakota road with no American identification." (Dkt. 5 at 4.) Respondents suggest these facts are similar to those presented in *Quintana*, 623 F.3d 1237. (*Id.*) But

*Quintana* is quite distinguishable on factual grounds. In *Quintana*, the Eighth Circuit found "a likelihood of escape when a noncitizen was stopped while speeding in a car registered in a distant state, told an officer he was heading back to that distant state, provided false information to the arresting officer, and was suspected of drug trafficking." *Walther Ademir A. S.*, 2026 WL 1734906, at *3. None of those facts are present here. At the moment of Petitioner's seizure, Petitioner was employed, married to a United States citizen, had lived in North Dakota for over a decade, and was well settled in his community. (Dkt. 1 ¶ 41; Dkt. 6-1 at 3-4.) The Form I-213 states that Petitioner was truthful about his immigration status ("freely admitted to being illegal present in the United States") and that the basis for his detention was "the results of the record checks and inspection"—not any facts that suggested ICE could not locate Petitioner if released.[4] (Dkt. 6-1 at 4.) Respondents' after-the-fact justifications are inconsistent with the law and Respondents' contemporaneous statements regarding why they detained Petitioner, not to mention unsupported by the Vandervaart Declaration and attached exhibits. *See Jaminton R.B.*, 2026 WL 2350324, at *3-4 (rejecting argument that immigration officers

[4] Based on the Form I-213, the "records checks" that formed the basis for Lowry's request that Billman detain Petitioner on January 27, 2026 constituted immigration records checks based on "biographical information." (*See* Dkt. 6-1 at 4.) After Petitioner was transported to the Portal Border Patrol Station for processing on January 28, 2026, he "was enrolled in the fingerprint identification system," the results of which showed some criminal history in 2022 and 2024. (*See id.*) Respondents did not rely on this criminal history when arguing their warrantless arrest of Petitioner was lawful. (*See* Dkt. 5 at 4 (relying on Petitioner's immigration status, and fact that he "was encountered on a remote North Dakota road with no American identification").)

had probable cause to believe petitioner was likely to escape based in part on lack of evidentiary support).

Indeed, based on the Form I-213, Petitioner freely provided the name and citizenship status of his wife when asked by immigration officers, as well as his home address and the name and address of his employer. (Dkt. 6-1 at 3, 5.) Courts have concluded that risk "of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Walther Ademir A. S.*, 2026 WL 1734906, at *4 (quotation omitted). The information available to immigration officers when Petitioner was arrested (had they inquired) was that Petitioner (who freely answered the questions they did ask) had been in the country for over a decade, was well-settled in his community, had a home address and employment, and was married to a United States citizen. Respondents have not offered any evidence that Petitioner resisted his arrest or tried to flee, and nothing in the record suggests they would not be able to locate Petitioner after they had obtained a warrant. *See Abelardo M.-G. v. Easterwood*, No. 26-CV-3479 (LMP/SGE), 2026 WL 2531525, at *3 n.6 (D. Minn. Aug. 27, 2026) (rejecting a "brightline rule" that would "permit[] warrantless arrests anytime a noncitizen is found in a vehicle"); *Vladimir G. v. Easterwood*, No. 26-CV-2971 (JMB/ECW), 2026 WL 1786418, at *3 (D. Minn. June 22, 2026) (rejecting a "per se rule that any non-citizen who an officer believes is removable and who is in a vehicle is 'likely to escape'"); *Manuel P.N.*, No. 26-CV-3799, ECF No. 10 at 7 ("Manuel stopped his vehicle voluntarily without evasion and spoke candidly with the ICE officers. He was fully honest about both his identity and his lack of legal immigration status. There is no

evidence that he tried to run or in any other way resisted his arrest or transportation to the St. Paul ERO field office. These facts do not establish a likelihood of escape." (citation modified)).

For all the reasons stated above, the Court finds there was not probable cause to believe that Petitioner was likely to escape before a warrant could be obtained. Therefore, the warrantless arrest of Petitioner was invalid under section 1357. *See Jorge Anibal P. P.*, 2026 WL 2017765, at *4.

* * *

In sum, the Court concludes that Respondents failed to show that Petitioner's warrantless arrest complied with section 1357(a)(2). The Court recommends granting the Petition and ordering Petitioner's immediate release. *See Jaminton R.B.*, 2026 WL 2350324, at *4 (collecting cases).

## IV. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT** the Petition (Dkt. 1) be **GRANTED** insofar as:

1. Petitioner's current detention be declared unlawful under the Constitution and laws of the United States;

2. Respondents be ordered to immediately release Petitioner from custody in Minnesota and, in any case no later than 11:00 a.m. Central Time on the day following an Order adopting this Report and Recommendation;

3. Respondents be ordered to coordinate Petitioner's release with Petitioner's counsel;

4. Respondents be ordered to release Petitioner with all personal documents and belongings, including his driver's license (without alteration or defacement), and without any conditions of release, such as ankle monitors or tracking devices, where Respondents' inability to immediately comply with this requirement shall not be a basis for delaying Petitioner's release; and

5. Respondents be required within 72 hours after issuance of an Order adopting this Report and Recommendation to provide the Court with a status update confirming Petitioner's release and other compliance with the Order.

Dated: October 6, 2026

s/ *Elizabeth Cowan Wright*
Elizabeth Cowan Wright
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).